The Court said further in its opinion in that case:

"No case has been cited, nor have I been able to find any case directly in point, and counsel for the Government, in oral argument, stated that this is the first time the question has been presented to a Court. Boiled down to its simplest terms this question is, does the cashing of a bad check, drawn upon a bank in another State, constitute a violation of the statute? An analogous question, involving an indictment for use of the mails to defraud, was presented in the case of Kann v. United States [323 U.S. 88], 65 S.Ct. 148 [89 L.Ed. 88, 157 A.L.R. 406]. This case holds that the mere clearing through the mails of checks, representing the proceeds of a fraudulent scheme after they have been cashed and are in the hands of a holder in due course, is not a part of the execution of the scheme to defraud so as to sustain a prosecution for using the mails to defraud.

"It is my opinion that by analogy the cashing of a bad check, even under circumstances which strongly indicate that the check will eventually be sent in interstate commerce, is not an offense under the Statute concerned here, and on the authority of the Kann case, I feel that the demurrer to the indictment and bill of particulars should be sustained."

The Wood case, supra, was the only case cited. The District Attorney stated in oral argument that he had no other citations to offer.

In view of that case, therefore, this Court is of the opinion that the check in the instant case drawn and cashed by this defendant is not a "forged" or "falsely made" "security" transported or caused to be transported by the defendant in interstate commerce within the meaning of Section 415, Title 18 U.S.C.A.

This Court is therefore of the opinion that the charge should have been brought under the local statute, and that no charge has been made out which brings this case under the purview of the Federal statute.

The Court, therefore, finds that the defendant, Pedro Manuel Flores, under the evidence as adduced, is Not Guilty of a violation of the Federal statute as charged.

It is therefore Ordered that the motion is sustained and the defendant is discharged from custody.

## FEATHERSTON v. JERSEY CENTRAL POWER & LIGHT CO.

Civil Action No. 8102.

District Court, D. New Jersey.

July 24, 1946.

Durand, Ivins & Carton, by J. Gerard Carton, all of Asbury Park, N. J., for plaintiff.

Autenrieth & Wortendyke, by Joseph F. Autenrieth, all of Newark, N. J., for defendant.

FORMAN, District Judge.

This matter is before the court upon notice and petition filed under the provisions of the Selective Training & Service Act of 1940, as amended, 50 U.S.C.A.Appendix, § 301 et seq. Plaintiff alleges that he is entitled to reinstatement in his former position following his discharge from the Service and claims compensation for loss of wages suffered by reason of defendant's refusal since January 1, 1946, to re-employ him as Medical Director.

On June 8, 1934, the defendant which employs about 1800 persons changed its insurance carrier and undertook to operate and control investigation and defense of claims and medical supervision of employees which theretofore had been controlled by the carrier. Plaintiff was employed as chief company physician "in a capacity similar to that of * * * general legal counsel." Salary was not agreed upon, but plaintiff was to submit monthly bills based upon his estimate of the value of his time and work. Bills for $400 and $600 for the first and second months were submitted, but afterwards it was agreed that he should be compensated at the rate of $250 monthly for his executive work and should be allowed, in addition, fees for medical examinations, treatments and unusual conferences. The carrier, however, reimbursed the company for the monthly allowance of plaintiff and for the fees and expenses of other physicians, counsel, and investigators in connection with claims against the company and any following litigation. Plaintiff occupied a desk in an office shared with defendant's Safety Director, Claims Investigator and Welfare Director when he took up his duties in 1934. It was his suggestion that a trained investigator be employed, and he also desired a change in company counsel. He revised medical forms used by the company, was responsible for the designation of physicians for pre-employment examinations in various localities and made these examinations himself on applications for employment from persons residing in the vicinity of Asbury Park, New Jersey, for which he received fees in addition to his monthly salary. At his company office he did only executive work in the nature of reviewing his files on compensation cases, non-compensable cases and pre-employment medical records.

He maintained three other offices—two for other business concerns where he served as Medical Examiner, and one for general practice. He was also attending surgeon on the staff of two hospitals and was retained as Medical Examiner for another concern. His gross yearly income averaged between $20,000 and $24,000.

He testified that he appeared daily at his office in defendant's plant, but he decided when to call, and arranged his own vacation schedule. His visits to this office on the average were for a minimum of fifteen minutes and a maximum of one and one-half hours. In 1939 he participated with defendant's employees in group insurance in the amount of $6,500 which presumably was based on his pay schedule, and the monthly premiums were deducted from his salary. During his employment he received no instructions, was never criticized and received only commendation.

Plaintiff entered the United States Army as a Major October 6, 1942, was discharged as a Lieutenant Colonel November 28, 1945, and his terminal leave expired February 2, 1946. Previous to his entry into the Service he discussed a leave of absence with company officials and its vice-president, Mr. Polhemus, advised him by letter dated September 29, 1942 as follows:

"So far as leave of absence is concerned you have it, of course, but I am forced to add, for what it may be worth. Conditions are such that I cannot avoid the qualification inasmuch as your office is an appointive one and upon your return must be disposed of by those who then may be in charge. I need not reassure you that if Tom and I are still in the picture and needs require it, you will surely be back to your old post."

During his absence there was a shift in the presidency and upon his discharge he discussed re-employment with defendant's new president. He indicated on two occasions his desire to return, made formal request by letter dated December 27, 1945, for reinstatement January 1, 1946, to which

he received this reply from the president of the company dated January 3, 1946:

"I am at a loss to understand any basis on which you may assert any claim to resume employment. I will be pleased to hear from you as to any reasons or basis on which you may assume to place such a request."

In 1944 ownership of defendant's company changed, its common stock came under the control of The Associated Gas & Electric Company, now General Public Utilities Company, and the immediate holding company became NY PA NJ Utilities Company. At this time the defendant again changed carriers, and the new carrier is the one generally used in the new system of ownership. Defendant no longer operates the department formerly supervised by plaintiff. Its investigator went into the employ of its former carrier, and the present carrier employs counsel and medical examiners of its own choosing. When accidents occur defendant makes a report to the carrier, and it handles the matter from that point.

The company, however, continues to require pre-employment examinations which are made by physicians in various localities depending upon the residence of the applicant. Review of these records which was formerly made by plaintiff is now done by defendant's safety department and if any question arises it is referred to the examining physician. Review of non-compensable cases formerly made by plaintiff is now handled by defendant's Welfare Department.

Defendant's vice-president testified that under the present arrangement there is no place or need for medical activities previously performed by plaintiff.

The pertinent section of the Selective Training and Service Act provides as follows:

"(B) if such position was in the employ of a private employer, such employer shall restore such person to such position or to a position of like seniority, status, and pay unless the employer's circumstances have so changed as to make it impossible or unreasonable to do so;" 50 U.S.C.A.Appendix, § 308(b) (3) (B).

Defendant has filed an answer which raises two points of defense:

1. Plaintiff was not an employee of defendant nor did he hold a position in the employ of defendant within the meaning of the statute at the time he entered the service of the United States Army.

2. Defendant's circumstances have so changed as to make it impossible or unreasonable to re-engage the services of plaintiff.

Both points presented by defendant were before the court in the case of Kay v. General Cable Corporation, 3 Cir., 144 F.2d 653, and the rule excluding independent contractors from the operation of the Act has been consistently applied. Frank v. Tru-Vue, Inc., D.C., 65 F.Supp. 220; MacMillan v. Montecito Country Club, D.C., 65 F.Supp. 240.

If the disposition of this case depended upon whether or not plaintiff is an employee or independent contractor, a comparison of facts with those in the case of Kay v. General Cable Corporation, supra, would show similarities and dissimilarities, and our conclusion would rest upon a discrimination of one or the other, whichever we thought to be material. It is unnecessary to explore the niceties revolving around the status of plaintiff as an employee or independent contractor, because we are of the opinion that defendant's second objection to the claim controls.

In the case of Kay v. General Cable Corporation, supra, the plaintiff applied under the Act for reinstatement as defendant's Medical Director following his return from the Service and the defendant contended its circumstances had changed during the plaintiff's absence. In addition to his position with defendant plaintiff also had been engaged as physician for an employee's Health Association and upon his return the Association declined to re-employ him preferring his successor. Defendant took the position that it makes for greater efficiency and avoids some loss of the workers' time to have the same physician for both the company and the Health Association. The court stated [144 F.2d 655]:

"The Act says, unless the 'employer's' circumstances have changed. Primarily, no doubt, this was intended to provide for cases where necessary reduction of the employer's operating force or discontinuance of some particular department or activity would mean simply creating a useless job in order to reemploy the plaintiff.

\*　　\*　　\*　　\*　　\*

"Accepting the defendant's contention that there would be some loss of efficiency and possibly some additional expense involved, more than that is needed to justify refusal to reinstate a person within the protection of the Act. In most cases it is possible to give some reason for the refusal. 'Unreasonable' means more than inconvenient or undesirable. The defendant's argument upon this point, if carried to its necessary conclusion, would defeat the main purpose of the Act and limit its operation to merely capricious or arbitrary refusals."

The duties formerly performed by plaintiff which still survive the present arrangement are now performed by defendant's welfare and safety departments in the review of pre-employment records and the file on non-compensable cases. It is assumed that these departments are manned by laymen for it was not shown that physicians are employed in them.

There was also the pre-employment examination plaintiff made on applications arising in the vicinity of Asbury Park for which he received fees paid by defendant in addition to his salary. We believe this work for which he received fees should be regarded as extrinsic to the position sought, and, in fact, plaintiff does not seek reinstatement in this respect, but as medical director.

Plaintiff argues that all the work that was formerly done is still performed, but through a change in company policy it is not done by defendant as before, but by the carrier and plaintiff contends defendant in effect has replaced his services by another. In 1944 there was virtually a new ownership of this defendant. Its contract of insurance having expired a new insurer common to the new ownership's chain of companies designed for the defendant a new pattern for insurance against its losses. This made away with not only plaintiff's position but of the investigator and counsel as well. We are convinced that this was carried out in good faith. Thus the defendant's circumstances were so changed as to make it unreasonable to compel the defendant to reemploy the plaintiff in a position the principal duties of which had completely disappeared.

The petition of the plaintiff should be dismissed.